*919 The opinion of the court was delivered by
Breaux, J.
This is a petitory action.
Plaintiffs sue the defendant to recover the southwest quarter of section 2, township 11 (eleven) south, range 8 east, situated west and northwest of Ooulée Granger, and 1 arpent front at southwest corner of north half of southwest quarter of the said section, and running east to said coulée.
They also sue to recover rents. Sfi * jfc * ^
They allege that this land was purchased from the United States government by Thomas Ooopwood in tibe year 1860, as a locator for account and ownership of Joel W. Jones and John A. Winston, jointly, with Wm. T. Moore, Henry A. Ellison, and others.
On the 5th of September, 1882, plaintiffs, by authentic deed, became the sole owners.
They contend that the defendant has. unlawfully taken possession of the lana. That he is domiciled thereon and cultivates it.
The defendant in his answer pleads the prescription of three, five and ten years, and that he went into possession in good faith and under a just title translative of property more than ten years prior to the institution of this suit.
That this deed of sale bearing date the 6th day of November, 1875, was recorded in the recorder’s office, parish of Vermilion, in which parish the land lies.
That his vendor purchased the property at tax sale for taxes due by Thomas Ooopwood, November 6, 1875.
He alleges that he has paid taxes on the land since 1875, and produced his tax receipts. That he has placed improvements on the land he values at $300, which, in case of eviction, he, in reconvention, claims.
The court house at Abbeville, La., was destroyed by fire on the 7th day of April, 1885; also defendant’s deeds and the tax deed of the vendor to him.
On the 30th May, 1887, this vendor signed an act, wnich was recorded, to renew the deed destroyed by fire.
We shall have occasion to refer again to this deed. v «í ¡|í $ •$>
The title was prior to 1875 recorded in the name of Thomas Ooop *920 wood. The land was assessed in that name to the date of the tax sale made to the author of defendant’s title. (Since the purchase made by the defendant it has been assessed in his name.)
The defendant urges that plaintiffs deed does not maintain his petitory action.
There is no evidence that it was recorded in the parish of Vermilion.
The right of a party to maintain a petitory action against an owner under a written title in good faith by producing an unrecorded deed is denied by defendant.
He confidently relies on Article 2266 of the Civil Code, declaring all sales affecting immovable property unrecorded to be null and void except between the parties to the act, and that they will not maintain a petitory action against a party in possession under a recorded title. C. C. 2242, 2246, 2253, 2442, 2264. Coleman vs. Coleman, 37 An. 567.
We prefer not to rest our decision upon these authorities, although there is some force in the position.
The fact, however, that plaintiffs’ deeds were unrecorded can be invoked in so far as relates to-the tax deed.
It is not reasonable on the part of the plaintiffs to contend that the property was not assessed in the name of the owner, and at the same time allege that Coopwood’s ownership, dating since 1861, was their own, as he in the purchase acted as their agent. They were absentees, unknown as the owners of the land. It is not strange that the assessor continued to assess the property in the name of Coop-wood some time after his death. }{< * % * * s¡í }J: *
The defendant necessarily relies upon secondary evidence to maintain his ownership.
It is his misfortune to have lost his title deeds.
We will seek to prevent that any advantage be obtained on the part of defendant in so far as relates to the evidence contained in the lost documents; but, at the same time, we will endeavor not to aggravate the loss by over-exacting and severe construction of the evidence.
The property was assessed in the name of Thomas Coopwood, whose title as owner was of record in the recorder’s office of Vermilion parish at the time.
*921 It was advertised for taxes in that name and sold at tax sale.
It can not reasonably be denied that the vendor to defendant did, in November, 1875, purchase lands at tax sales assessed as just mentioned. * * * Hi Hi Hi Hi Hi
The plaintiffs contend in opposition to this tax title:
1. That sales made in violation of Act No. 7 of 1875 are null and Void.
2. That a tax sale is void if the taxes have been previously paid.
1. The sale was not made in violation of Act 7 of 1875.
It was not overflowed land and, therefore, did not come within the provision of that act. The only evidence upon the subject is an admission made by counsel, to which our attention is especially directed.
It reads: “ It is admitted by all parties that this land was entered In 1860, by Thomas Co'opwood as overflowed lands, at the price of 12 1-2 cents an acre.”
It does not follow that it was overflowed land in 1873 and 1874, at the time assessed. During the many intervening years great changes Lave taken place in the level of lands, the flow of the water and the -drains.
To enable any one to obtain the benefit secured by that act the proof of overflow must be more recent.
That act provides only as “to taxes due on lands overflowed •during the flood of 1874.”' Proviso, Sec. 7.
There is no evidence at all about the overflow of 1874. The iecord does not disclose any proof except the admission just mentioned, predicated upon the ex parte affidavits of entrymen not always particular about their affidavits respecting the overflowed •condition of the land they seek to enter or purchase from the government. * Hi * * -fi Hi *
2. If the taxes had been paid by the plaintiffs, as alleged, the tax title would be void.
The receipt of payment is not produced.
The oral testimony of one of the plaintiffs in regard to the payment of these taxes does not refer to the lands claimed except in general terms.
The lands are not specially referred to as lands upon which plaintiffs have paid taxes.
*922 We conclude that the tax title was sufficiently legal to justify defendant’s good faith, and support his allegation that he in 1875 purchased a title he had reason to believe just and translative of property. ¡¡«‡‡‡‡‡‡‡
It is next contended by plaintiffs’ able and energetic counsel that the acts of May 80, 1887, in whiclothe parties declared that the original act of sale had been destroyed, declarations were made fatally damaging to defendant.
Let us examine the grounds: In the deed of renewal the land is erroneously described as in township 12.
It is situated within the limits of township 11 (eleven).
It is sought to hold him bound by the terms of this act of renewal.
The defendant is an illiterate man; also the vendor of the land to him. The locality was described: A certain coulée was given as the boundary, which coulée does not flow through any part of township 12, but through township 11, in which lies the land. He fenced this land, cultivated it, and has had actual and uninterrupted possession of it since his purchase in 1875.
The evidence discloses a mistake of one figure only in drawing up the act, 12 when it should have been 11. The remainder of the description in the act shows that the land is in 11.
Plaintiffs allege that the defendant has possession of the land wa have already described. The defendant shows that this is the land which he bought in 1875, and the deed to which was recorded in the mortgage book. This is the land on which he has paid taxes since that time.
The evident error in inadvertently substituting the figure 2 for 1 should not be the cause of his losing the rights he has.
The evidence was properly admitted under the circumstances and the defendant was rightfully allowed to correct the error and prove in which township the land lies.
The defendant has shown open and uninterrupted possession more than ten years, under a just title acquired in good faith.
He is protected by the plea of three years in so far as relates to the tax title, and by the plea of ten years as an owner in good faith during that time.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from is affirmed. The plaintiff and appellant to pay the cost of appeal.